Mr. Justice S wayne
delivered the opinion of the court:
This is an appeal from the judgment of the Court of Claims.
But a single point is presented for our consideration.
The case arose out of a contract for the transportation of army supplies. The eighth clause of the, contrac tprovidod that upon the arrival of the stores transported at their point of destination, a board of survey should be called, without delay, who should examine their quantity and condition. In case of loss, deficiency, or damage, it was made the duty of the board to investigate the facts, assess the amount of loss or injury, and state whether it was attributable to neglect or to the want of care on the part of the contractor or to causes beyond his control. It was further provided that a copy of the proceedings of the board “ shall be furnished to the contractor, shall be attached to the bill of lading, and shall conclude the payments to be made on it.” For deficiency and damages the contractor was to pay the cost at the point where he received the supplies, and freight was to be deducted in the latter case in proportion to the amount of damages assessed.
If no board should be called, through the neglect of the proper military authority, it was to be considered that the contractor had delivered all the stores specified in the bill of lading in good order, and he was to be paid accordingly. Such a board was called and reported in several instances. All the reports were in the following form :
“Proceeding of a board of survey which assembled at Fort Lyon, C. T., by virtue of the following order, viz :
(Special Order No. 145.)
“ Headquarters, Fort Lyon, O. T., ■
“ July 31st, 18G5.
“A board of survey is hereby ordered to meet at the commissary building to-morrow morning at 9 o’clock, or as soon thereafter as practicable, to examine and report upon the quantity and condition of certain commissary and quartermaster stores being received by Lieut. C. M. Cossit, A. A. Q. M. &' A. C. S.
*48 “DETAIL EOR THE BOARD.
“ 1st Lieut. J. A. Cramer, Yet. Batt., 1st Col. Cav.
“ 1st Lieut. Henry Gronheim, 15th Kan. Cav.
“ By order of Theo. Oonkey, capt. comdg. post.
(Signed) “JAMES OLNEY,
“ 2d TAent. & Post Adjutant.
“ Fort Lyon, Aug. 1 st, 1865.
“ The board met pursuant to the above order — present, 1st Lieut. J. A. Cramer, Vett. Batt., 1st Col. Cav., & 1st Lieut. Henry Gronheim, 15th Kan. Cavy. — and proceeded to examine the supplies delivered by Freight-Contractor W. S. Shrewsbury, in contractors’ train No. 124, Fort Lyon, No. 5, and find as follows:
“ Packages all correct and in good order, with the exception of nine sacks of corn deficient; weight agreeing with the B. L., with the exception of four thousand two hundred and forty (4,240) pounds of corn deficient.
“ The board therefore recommend that the deficiency of corn be charged to the freight-contractor, and that Lieut. C. M. Cossitt, A. A. Q. M., be permitted to drop said deficiency from his return. '
“ The board then proceeded to other business.
“JOSEPH A. CRAMER,
“ 1st Lieut. Vet. Batt., 1st Col. Cav., President.
“HENRY GRONHEIM,
“ 1st Lieut. 15th Kansas Cavalry, Recorder.
“Approved.
“THEO. CONKEY,
“ Capt. 3d. Wis. Cav., Comdg. Post”
In all instances the contractor was paid the amount due, according to the bill of lading, less the deductions found by the board to be chargeable against him, and gave a receipt as follows:
“ Received, at Fort Leavenworth, Kansas, the 23d of October, 1865, of Gapt. H. L. Thayer, assistant quartermaster United States Army, the sum of ninety-one thousand two huD- *49 dred and forty-three dollars and sixty cents, in full of the above account.
(Signed in duplicate.)
“W. S. SHREWSBURY,
“ By ANDREW' STUART,
uRis Attorney.”
In each case the 'contractor, when the receipt was given, u protested against the deductions, and gave notice to the quartermaster who made the payment that he should look ot the defendants for a corrected adjustment and for full payment.” The Court of Claims held for naught the findings and recommendations of the board. The counsel for the appellee maintains that this was right, because the agreement was that in case of deficiency the board should “ investigate the facts and report the apparent cause and assess the amount of loss or injury, and state whether it was attributable to neglect or want of care on the part of the contractor or to causes beyond his control,” and that their proceedings failed to carry out the intent and terms of the contract in these particulars. This is too narrow and technical a view of the subject. The provision of the contract touching the board was important to the Government. The points of delivery were in the wilds of the West. If there was any failure by the contractor, the time and place of delivery were the time and place to ascertain the facts and to put the evidence in an effectual shape. Afterward it might be impossible for the Government to procure the proofs -; and if it were done, the expense might greatly exceed the amount of the items in dispute. At the delivery the bill of lading spoke for itself. The teamsters and guards who accompanied the train were present and could readily be examined. It is said by the Court of Claims, in their conclusions of law, that the board failed to make the requisite investigations of the facts. To do this was one of the most important duties devolved upon them. It is to be presumed they discharged it. They did not say in terms that they had done so, but they reported conclusions.carrying with them the strongest implicationthat what was recommended rested on a basis of ascer-tainedfacts. The board, ashonest men, could not have announced such results without the proper previous examination. The means were at hand, and the work was easy. A formal and *50 technical instrument was not to be expected from military men acting' under such circumstances. We think the reports were sufficient, and that they conform, in every substantial particular, to the requirements of the contract.
It does not appear that the contractor objected either as to form or substance when the reports were made, nor that he disclosed any objection subsequently until the time of payment. Nor did his objections then assume a definite shape. He notified the quartermaster that he should claim “a re-adjustment and full payment.” The reasons and grounds of the claim were not stated. The payments were made at a distant point and after the lapse of several months. The witnesses were then scattered and gone. Most of them doubtless were difficult if not impossible to be found. As the contractor was silent when he should have spoken, he cannot be permitted to speak at the later period, in the altered condition of things which then existed as regards the other party. He must be held to have waived any exception which he might have taken at the proper time, and to have been, when the payments were made, finally concluded.
The judgment of the Court of Claims is reversed, and the case will be remanded, with directions to dismiss the petition.
Mr. Justice Field dissented.